FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 16 2011

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANN BURTON,

                            Plaintiff,

            -against-

THE CITY OF NEW YORK; DEPARTMENT OF
HEALTH (DOH); NEW YORK POLICE DEPT
(NYPD); OFFICERS CRILLY # 27276, VEGA
#14345 and THE DEPARTMENT OF
ENVIRONMENTAL PROTECTION (DEP),

                            Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-5345 (SLT)(LB)

**TOWNES, United States District Judge:**

        Plaintiff Ann Burton brings this *pro se* action against the City of New York; its

Department of Health ("DOH"), Department of Environmental Protection ("DEP") and Police

Department ("NYPD"); and two police officers: Crilly and Vega (collectively, "the Officers").

The complaint in this action repeats, in greater detail, many of the same allegations plaintiff

made in a previous complaint, which this Court dismissed as frivolous approximately two

months ago.  Although the complaint also names three defendants who were not named in that

previous action, the allegations against these defendants do not suggest any Constitutional or

federal statutory violations.  Accordingly, while plaintiff's request to proceed *in forma pauperis*

is granted for the purpose of this Memorandum and Order, the complaint in this action is

dismissed in its entirety for the reasons set forth below.

### *BACKGROUND*

        This is the twelfth action that plaintiff has filed in this Court since December 23, 2010.

This Court, acting on its own motion pursuant to 28 U.S.C. § 1915(e)(2)(B), has already

dismissed five of these actions on various grounds, including failure to exhaust administrative remedies, *see Burton v. White Glove Placement, Inc.*, No. 11-CV-1649, and duplicativeness, *see Burton v. Shinseki*, No. 11-CV-2030. Two of these five actions – *Burton v. New York Police Dep't*, No. 11-CV-4071, and *Burton v. United States Equal Employment Opportunity Comm'n*, No. 11-CV-4074 – were dismissed on the grounds that they were "frivolous."[1]

In many respects, this complaint in this action closely resembles the complaint *Burton v. New York Police Dep't*, No. 11-CV-4071. First, all three defendants named in No. 11-CV-4071 – the NYPD and the Officers – are among the six defendants named in this action. Second, the complaint in this action alleges many of the same facts alleged in the prior case. In a September 1, 2011, Memorandum and Order dismissing No. 11-CV-4071, this Court summarized the facts in that case as follows:

> [P]laintiff alleges that on August 1, 2011, she experienced severe abdominal pains after drinking the tap water in her apartment (Complaint at 2.) Immediately thereafter, plaintiff observed a Hispanic man entering the basement of her apartment building (*id.*). Plaintiff, who recalled having heard someone cutting a pipe in the basement of her building on the evening of July 28, 2011, suspected that someone was poisoning her water. Accordingly, after she "verified . . . that there was no service order for her building or basement on July 28 or August 1, 2011," plaintiff called "911" and "poison control" (*id.* at 2-3).
>
> The Officers responded to plaintiff's "911" call, but refused to take plaintiff's complaint. According to plaintiff, "Crilly said this is a DEP matter and not a NYPD matter" *(id.)*. Plaintiff, who alleges that she had previously informed the 107th Precinct that she was

---

[1]An action is frivolous as a matter of law when, *inter alia,* it is "based on an indisputably meritless legal theory"– that is, when it "lacks an arguable basis in law . . . , or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co..,* 141 F.3d 434, 473 (2d Cir. 1998).

"engaged in protected activity" (*id.* at 2), then informed the
Officers of an unspecified "Order" which had been entered in one
of her prior court cases, and alleged that she had received a "death
threat" while appearing in federal court on June 30, 2011 (*id.* at 3).
Plaintiff even showed the Officers the "death threat evidence" . . .
but the Officers still refused to take any action (*id.*). According to
the complaint, "Crilly said he would not make a report for a month
old incident" (*id.*).

*Burton v. New York Police Dep't*, No. 11-CV-4071, slip op. at 1-2 (E.D.N.Y. Sept. 1, 2011).

Plaintiff's complaint in this action alleges many of these same facts, albeit in more detail.
Plaintiff alleges that she "ingested tainted tap water" in her apartment on August 1, 2011, at
approximately 2:30 p.m. (Complaint at 4, ¶ 1). Ten minutes later, plaintiff looked out of her
window and saw a Hispanic man entering the basement of her building (*Id.* at 4, ¶ 2). Plaintiff
who had heard the sound of someone cutting pipes in the basement at around 8:30 p.m. on July
28, 2011 (*id.* at 6, ¶ 8), immediately telephoned building management and confirmed that there
were "no maintenance problems or service authorizations" at the times when plaintiff heard the
cutting or saw the man enter the basement (*id.* at 5, ¶ 3).

Around 4:05 p.m. on August 1, 2011, after reporting the suspicious activity to building
security, plaintiff "telephoned 311 and reported tainted tap water . . . and [her] injury" (*id.* at 5,
¶ 6). The 311 operator then called the DOH and 911, which resulted in the Officers responding
to the scene at approximately 5:00 p.m. (*id.* at 6, ¶ 8). Plaintiff informed the Officers of, among
other things, "[the] unauthorized building basement pipe cutting . . . ; [the] August 1, 2011
unauthorized basement activity; [the] death threat . . .; [the] federal court cases; daily home
invasions, and theft and damage to [her] property" (*id.*). Nonetheless, the Officers declined to
take action. According to the complaint, the "Officers deemed, without investigating the crime
scene, that plaintiff's injury was a Department of Environmental Protection (DEP) matter, and

3

not a NYPD issue" (*id.* at 7, ¶ 11). In addition, defendant Crilly stated that they were "not going to make a report for an old death threat" (*id.*).

Although these allegations are essentially identical to the allegations contained in the complaint in No. 11-CV-4071, the complaint in this action names three new defendants – the City of New York, the DEP and the DOH – and adds some allegations specifically relating to the latter two. The complaint alleges that plaintiff called the DEP on September 13, 2011, and "reported [the] tainted tap water injury" (*id.* at 8, ¶ 18). The DEP "issued a kit for lead tests," but "never inspected [the] tap water, to declare it safe" (*id.*). The complaint alleges that the DEP "failed to follow company regulations" and thereby "violated [plaintiff's] rights" (*id.*).

With respect to the DOH, the complaint states that plaintiff called 311 again on September 14, 2011, apparently to check the status of complaints lodged with the DOH (*id.* at 8, ¶ 19). Plaintiff spoke to a 311 operator, who informed plaintiff:

> The Department of Health . . . has determined that this issue is not within its jurisdiction. Cannot be determined if another agency would regulate the issue reported (*id.* at 9 (quoting 311 Operation Yasmin, ID # 1335, 1325)).

The complaint alleges that the DOH closed plaintiff's complaint without conducting any investigation, violating "company regulations" and plaintiff's Constitutional rights (*id.*).

While plaintiff's complaint does not specify which "Constitutional rights" were allegedly violated by the DOH or which "rights" were allegedly violated by the DEP, it lists specific federal Constitutional violations in section II, entitled "Basis for Jurisdiction." The complaint states that defendants' actions violated, among other things, the Fourth Amendment's prohibition against unreasonable searches and seizures; the due process clauses of both the Fifth and Fourteenth Amendments; and the Fourteenth Amendment's Equal Protection Clause (*id.* at 3).

4

The complaint principally seeks compensatory damages of $50 million and punitive damages of $100 million, but also seeks "sanctions to the fullest extent of the law for violations of her Constitutional rights" (*id.* at 10).

## DISCUSSION

Title 28, Section 1915(e)(2)(B), of the United States Code requires a district court to dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). However, a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

### *The Claims against the NYPD and the Officers*

Plaintiff's claims against the NYPD and the Officers are essentially identical to the claims raised against these same defendants in *Burton v. New York Police Dep't*, No. 11-CV-4071. Accordingly, plaintiff's claims against those three defendants are dismissed for the reasons set forth in this Court's September 1, 2011, Memorandum and Order in that case.

5

***The Claims against the DOH, the DEP, and the City of New York***

Plaintiff's complaint alleges that the DOH's inaction violated her "Constitutional Rights,"

Complaint at 9, and that the DEP's failure to inspect her water violated her "rights." *Id.* at 8, ¶

18. While the DOH and the DEP may be "state actors" against whom plaintiff might be able to

pursue a civil rights claim under 42 U.S.C. § 1983 ("section 1983"), plaintiff would also need to

show that the party acting "under color of state law" deprived him of "rights, privileges, or

immunities secured by the Constitution or laws of the United States." *See Pitchell v. Callan*, 13

F.3d 545, 547 (2d Cir. 1994). The facts alleged by plaintiff do not suggest a violation of the

United States Constitution or any federal laws. *See Bender v. City of New York*, No. 09 CV 3286

(BSJ), 2011 WL 4344203, at *10 (S.D.N.Y. Sept. 14, 2011) (no constitutional right to

government assistance from the various city officials and organizations named in that action);

*Stone v. Department of Investigation of City of New York*, No. 91 Civ. 2471 (MBM), 1992 WL

25202, at *2 (S.D.N.Y. Feb. 4, 1992) ("there is no constitutional right to an investigation by

government officials"). To be sure section II of the complaint alleges the violation of particular

Constitutional provisions, including the Fourth, Fifth and Fourteenth Amendments of the United

States Constitution. However, the facts alleged in the complaint do not suggest a violation of the

Fourth Amendment's prohibition on unlawful searches and seizures, the due process clause of

the Fifth or Fourteenth Amendments; or the Equal Protection Clause of the Fourteenth

Amendment.

Plaintiff's complaint also fails to suggest any basis for claims against the City of New

York, which is only mentioned in the caption and that portion of the complaint which lists the

parties. Although the DOH and the DEP are municipal agencies, liability for damages in a

section 1983 action may not be based on the *respondeat superior* or vicarious liability doctrines. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Moreover, while a municipal agency "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *id.* at 690, the complaint itself states that the agencies' inaction *violated* "company regulations." Complaint at 8-9. Accordingly, plaintiff's claims against the City of New York and its agencies, the DOH and the DEP, must also be dismissed.

### Warning Against Repetitive, Frivolous or Vexatious Litigation

This Court notes that this is the third of plaintiff's twelve actions to have been dismissed as frivolous within the past ten weeks. *See Burton v. United States Equal Employment Opportunity Comm'n*, No. 11-CV-4074, 2011 WL 4344154, at *1 (E.D.N.Y. Sept. 12, 2011); *Burton v. New York Police Dep't*, No. 11-CV-4071, slip op. at 6 (E.D.N.Y. Sept. 1, 2011). Moreover, this is at least the third action in which plaintiff has repeated previously dismissed claims or repeated claims already pending before this Court. *See, e.g., Burton v. White Glove Placement, Inc.*, No. 11-CV-4072 (SLT)(LB), 2011 WL 5402171, at *3 (E.D.N.Y. Nov. 7, 2011) (dismissing employment discrimination claims against defendant Friedman which were already dismissed with prejudice in *Burton v. White Glove Placement Inc.*, No. 11–CV–1649 (SLT)(LB), slip op. at 5 (E.D.N.Y. Apr. 27, 2011)); *Burton v. Shinseki*, No. 11-CV-2030 (SLT)(LB), slip op. at 2 (E.D.N.Y. Nov. 4, 2011) (dismissing the action as duplicative of *Burton v. Shinseki*, No. 10-CV-5318 (SLT)(LB)).

This Court warns plaintiff that it will not tolerate the practice of repeating claims. "The Supreme Court and numerous courts of appeals have recognized that courts may resort to

7

restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *In re Martin-Trigona*, 9 F.3d 226, 228 (1993). Thus, "[i]f a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (internal quotations and citations omitted). Those restrictions can include excepting vexatious litigants from the normal availability of *in forma pauperis* status in civil cases, or subjecting a vexatious litigant to a "leave of court" requirement with respect to future filings. *See In re Martin-Trigona*, 9 F.3d at 228-29 (citing cases).

## *CONCLUSION*

For the reasons set forth above, plaintiff's complaint fails to state a non-frivolous claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Since there is no "indication that a valid claim might be stated," *Cuoco*, 222 F.3d at 112; *Gomez*, 171 F.3d at 795, this action is dismissed. This Court warns plaintiff that it will not tolerate the practice of repeating claims, and trusts that this warning will suffice to dissuade plaintiff from filing vexatious, harassing or duplicative lawsuits in the future. The Court certifies pursuant to 28 U.S. C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/SANDRA L. TOWNES
United States District Judge

Dated: November  /5, 2011
       Brooklyn, New York

8